**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| US INVENTOR INC. and NATIONAL SMALL BUSINESS UNITED,<br><br>    Plaintiffs,<br><br>v.<br><br>UNITED STATES PATENT AND TRADEMARK OFFICE and KATHERINE VIDAL, Under Secretary of Commerce for Intellectual Property and Director of the United States Patent and Trademark Office,<br><br>    Defendants. | Civil Action No. 1:22-cv-2218 |

**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**

Plaintiffs US Inventor Inc. ("US Inventor") and National Small Business United ("NSBU"), by and through their undersigned counsel, allege as follows for their complaint against the United States Patent and Trademark Office ("USPTO") and Katherine Vidal, the Under Secretary of Commerce for Intellectual Property and Director of the USPTO, in her official capacity only:

**JURISDICTION AND VENUE**

1.      This is an action seeking relief under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701–706. This Court has subject matter jurisdiction over this action under 28 U.S.C. § 1331 (federal question jurisdiction).

2.      This Court has authority to grant Plaintiffs' requested relief under 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 701–706.

3.      Venue is proper in this judicial district under 28 U.S.C. § 1391(e)(1)(C) because NSBU "resides" in this judicial district and no real property is involved in this action.

## NATURE OF THE ACTION AND PARTIES

4.     Plaintiff US Inventor is an Indiana nonprofit corporation with its principal office in Clearwater, Florida, and a website at www.usinventor.org. US Inventor fosters innovation through advocacy, education, and public outreach on matters of importance to individual inventors and small innovative businesses. US Inventor frequently works with policymakers in government to advocate for more certain patent rights. US Inventor also frequently files amicus briefs in pending court proceedings to advance the point of view of its inventor members.

5.     US Inventor's membership includes small business and individual patent owners who were, are and will be respondents to United States Patent and Trademark Office inter partes review ("IPR") and post grant review ("PGR") petitions filed with the Patent Trial and Appeal Board ("PTAB"). Some of those member-respondents have not yet filed preliminary responses to such petitions, and if available, would use rules promulgated under the rulemaking Petition described herein to "veto" being hauled into a PTAB trial. Absent such rule-based "veto" power, member-respondents face an increased risk of patent cancellation under PTAB procedures biased against patent owners, compared with either federal district court invalidity proceedings, or compared with no other co-pending invalidity proceeding existing at all against their patents. Accounting for patents with multiple petitions filed against them, after institution of a PTAB trial, there is an 84% chance that the PTAB will find a claim or claims of such member-respondents' patents unpatentable, and will issue cancellation decisions accordingly.

6.     Because of the rulemaking denial described herein, such respondent-members suffer a concrete injury to their property interests by not possessing such "veto" power. Such concrete injury is caused directly by the lack of rulemaking described herein. Such concrete injury is capable of repetition, yet evading review, since additional US Inventor members (or

even the same ones) are constantly and repeatedly thrust into a position of defending against a new PTAB IPR or PGR petition, each triggering a short six-month deadline for filing preliminary responses where member-respondents would invoke (but currently cannot invoke) "veto" power under rules that do not yet exist because of the actions complained of herein.

7.      To summarize, at least one US Inventor member has standing, members' interests in preserving their patent rights from cancellation are connected to US Inventor's purpose, and neither the present claim nor the relief requested requires participation of US Inventor's individual members.

8.      Plaintiff NSBU is an Ohio nonprofit corporation with principal offices in Washington, D.C. For over 80 years, NSBU has represented the small business community before the U.S. Congress, the White House, and federal agencies, advocating for the interests of their customers, their companies, and their communities to help ensure the continued viability of their small business way of life. NSBU's membership comprises more than 65,000 small businesses in all fifty (50) states and representing every industry. NSBU is also known as the National Small Business Association (not-for-profit), with a website at www.nsba.biz. Its Small Business Technology Council ("SBTC") supports small business technology firms through educational activities, including conferences and seminars on government procurement and intellectual property. SBTC encourages the exchange of ideas and information on improving how to transition research and development to the commercial marketplace. SBTC is not a separate legal entity, though it has its own website at www.sbtc.org (*see also* www.sbtc.org/patents). NSBU also has standing because at least one NSBU member has standing (*e.g.*, Mr. Sherman, whose declaration is Exhibit G hereto), members' interests in

preserving their patent rights from cancellation are connected to NSBU's purpose, and neither the present claim nor the relief requested requires participation of NSBU's individual members.

9.      The USPTO is an agency of the United States within the Department of Commerce, 35 U.S.C. § 1, headquartered in Alexandria, Virginia. The USPTO issues patents, 35 U.S.C. § 131, and conducts administrative review of patentability under the America Invents Act of 2011 ("AIA"), 35 U.S.C. § 311 *et seq*. The USPTO is an "agency" under the APA. 5 U.S.C. § 551(1).

10.      Defendant Vidal is the Under Secretary of Commerce for Intellectual Property and the Director of the USPTO. She is sued in her official capacity only.

11.      Plaintiffs US Inventor and NSBU jointly filed a petition for rulemaking under 5 U.S.C. § 553(e) with the USPTO, requesting that it promulgate regulations to govern the decision on institution of AIA trials. Despite the fact that the AIA mandates the promulgation of such regulations, the USPTO denied the petition. It did so apparently as part of its efforts over the years to avoid setting rules that may limit its flexibility to institute AIA trials that should not be instituted.

12.      US Inventor and NSBU now respectfully ask this Court to find that the USPTO's Denial was arbitrary and capricious, an abuse of discretion, and contrary to law within the meaning of the APA, and to vacate such Denial.

**FACTS**

13.      On August 27, 2020, US Inventor and NSBU (through its SBTC) jointly filed with the USPTO a Petition Pursuant to 5 U.S.C. § 553(e) for Rulemaking that would set forth specific Criteria for Deciding Institution of AIA Trials (the "Petition"). The Petition is attached hereto as Exhibit A.

14.     On October 19, 2021, Defendants notified US Inventor and NSBU that the Petition was "denied" in a three (3)-page decision signed by Vice Chief Administrative Patent Judge Michael P. Tierney, ("Decision"). The Decision is attached hereto as Exhibit B. By an email dated November 1, 2021 (attached hereto as Exhibit C), Commissioner Hirshfeld, then performing the functions and duties of the Director, confirmed to US Inventor that the Decision was the USPTO's response to the Petition. Accordingly, the USPTO's denial of the Petition is final agency action on a petition for rulemaking subject to judicial review. *See, e.g.*, *Massachusetts v. EPA*, 549 U.S. 497, 527–28 (2007).

15.     An agency grant of the Petition would not have required the agency to promulgate the suggested text Plaintiffs proposed as a potential proposed rule. Under the APA, Defendants had discretion to grant the Petition, publish in the Federal Register proposed rule text of its own making (bound, of course, by the APA requirement that its own proposed rule text must not be irrational, arbitrary, capricious, an abuse of discretion or contrary to law). However, Plaintiffs assert that rulemaking once completed under their Petition would likely be more patentee-favorable, and would likely include a small business / individual "veto" power over being hauled involuntarily into a PTAB trial.

16.     It took over a year for the USPTO to act on the Petition. When it did act, the Denial stated that the Petition's definition of a "privy" departs from traditional common law principles, and for this reason alone the USPTO was "not persuaded that a new definition should be adopted." Ex. B at 2.

17.     Regarding the rest of the Petition, the Denial stated that the Petition's proposed amendment of rules on the institution of AIA trials implicated issues that "overlap those raised in" a USPTO Request for Comment ("RFC") that post-dated the Petition. *Id.* at 2–3. The RFC

was not part of an agency proceeding that might lead to rulemaking; nor could it have triggered actual rulemaking under the APA. The Denial stated that the "Office, in principle, supports the [Petition's] goal of providing clarity as to institution standards for AIA trials." *Id* at 2. Nevertheless, the USPTO denied the Petition "with the understanding that suggestions provided in the Petition will be considered as part of any future rulemaking on AIA trials." *Id*. at 3. In other words, the USPTO conceded that the Petition included rulemaking suggestions that would be considered only in unspecified "future rulemaking on AIA trials," thereby admitting that it did *not* "conclude a matter presented to it." 5 U.S.C. § 555(b).

## STAUTORY FRAMEWORK AND REGULATORY BACKGROUND

18.     The AIA established new proceedings at the USPTO for challenging the validity of issued patent claims in administrative trials conducted by the Patent Trial and Appeals Board ("PTAB"). Such a trial may be an *inter partes* review ("IPR") or post grant review ("PGR"). The Director of the USPTO is vested with broad authority to institute or deny institution of such proceedings, 35 U.S.C. §§ 314 and 324, and the PTAB conducts the reviews. 35 U.S.C. §§ 316(c), 326(c).

19.     The AIA set only a *one-sided* (*prohibitory*) bound on the Director's authority to decide whether to institute an AIA trial—"[t]he Director *may not* authorize [an IPR] to be instituted unless … there is a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition." 35 U.S.C. § 314(a) (emphasis added). The AIA contains no statutory right of petitioners to have an AIA trial instituted, nor does it provide for any sufficient conditions that, if met, would have mandated institution. The AIA thus vests with the Director broad discretion to *deny* AIA trial institution for any reason even if petitioner

meets the "reasonable likelihood" of success threshold,[1] and the Director's decision on institution "shall be final and nonappealable." 35 U.S.C. §§ 314(d).[2]

20.    Under well-known principles of administrative law, federal agencies that start with broad discretion are capable of channeling or limiting that discretion through rulemaking, after which they must under law abide by such rules and limitations. The AIA accordingly provides specific statutory factors as to how the Director should exercise the discretion for denying institution, and the Director must do so *by regulations*. For example, the AIA authorizes the Director, where another proceeding or matter involving the patent is before the Office, "to determine the manner in which the … review or other proceeding or matter may proceed, including providing for stay, transfer, consolidation, or termination." §§ 315(d) and 325(d).

21.    In addition, the AIA provides that in making the decision on institution, the Director may "take into account whether, *and reject the petition or request* because, the same or substantially the same prior art *or* arguments previously were presented to the Office." § 325(d) (emphasis added).

22.    The AIA also instructs the Director to ensure *through regulation* the protection from any "improper use of the proceeding, such as to harass or to cause unnecessary delay or an unnecessary increase in the cost of the proceeding." §§ 316(a)(6) and 326(a)(6). The latter

---

[1]  *SAS Inst. Inc. v. Iancu*, 138 S. Ct. 1348, 1356 (2018) ("[§] 314(a) invests the Director with discretion on the question whether to institute review ... ." (emphasis omitted)); *Cuozzo Speed Techs., LLC* v. *Lee*, 136 S. Ct. 2131, 2140 (2016) ("[T]he agency's decision to deny a petition is a matter committed to the Patent Office's discretion," and there is "no mandate to institute review."); *In re Power Integrations, Inc.*, 899 F.3d 1316, 1318 (Fed. Cir. 2018) ("If the Director decides not to institute, for whatever reason, there is no review. In making this decision, the Director has complete discretion to decide not to institute review.") (Citations omitted); *Harmonic Inc. v. Avid Tech., Inc.*, 815 F.3d 1356, 1367 (Fed. Cir. 2016) ("[T]he PTO is permitted, but never compelled, to institute an IPR proceeding.")

[2] *Thryv, Inc. v. Click-To-Call Techs.*, 140 S. Ct. 1367, 1373-74 (2020) ("§314(d) overcomes the presumption favoring judicial review").

provisions embody Congress' express recognition of "the *importance of quiet title* to patent owners to ensure continued investment resources." H.R. Rep. No. 112-98, pt. 1, at 48 (2011) (emphasis added). Congress warned generally against institution of AIA trials "as tools for harassment or a means to prevent market entry through repeated litigation and administrative attacks on the validity of a patent [as] such activity would divert resources from the research and development of inventions." *Id.*

23.    Moreover, as the Supreme Court recognized, Congress did not contemplate AIA trials to be conducted *in parallel* with district court actions on the same patent claims—Congress rather intended AIA trials to be "quick and cost effective *alternatives* to litigation." *Id.* (Emphasis added). *See Thryv, Inc.,* 140 S. Ct. at 1374-75 ("The purpose of §315(b), all agree, is to minimize burdensome *overlap* between [IPR] and patent-infringement litigation.") (Emphasis added).

24.    Accordingly, as a "quick and cost effective *alternatives* to litigation," the AIA prescribes that the PTAB issue its final determination in AIA trials not later than 1 year after institution, except that it may, for good cause shown, extend the 1-year period by not more than 6 months. 35 U.S.C. §§ 316(a)(11) and 326(a)(11). As the other considerations discussed above, this too may present a reason for denial of institution.

25.    In recognition of the limited PTAB personnel to fully adjudicate the proceedings within the 1-year statutory deadline, section 6(c)(2)(B) of the AIA provides that the Director may impose a limit on the number of IPRs that may be instituted during each of the first four one-year periods in which the provisions of the AIA amendments establishing IPRs are in effect, if such number in each year equals or exceeds the number of legacy *inter partes* reexaminations that are ordered in the last fiscal year ending before the effective date of such amendments. Similarly,

section 6(f)(2)(B) of the AIA authorizes the Director to impose a limit on the number of PGRs that may be instituted in each of the first four one-year periods in which the provisions of the AIA amendments establishing PGRs are in effect. The AIA thus confers on the Director plenary authority, indeed a duty, to ensure reasonable PTAB workload by discretionary denials of AIA trial institutions.

26.     Congress, however, did not vest in the Director this broad nonappealable discretion to deny AIA trial institution pursuant to AIA §§ 6(c)(2)(B), 6(f)(2)(B), 35 U.S.C. §§ 315(d), 316(a), 316(a)(6), 316(a)(11), 325(d), 326(a), 326(a)(6), and 326(a)(11) discussed above, without also requiring the Director to promulgate *implementing* regulations governing the Director's exercise of such broad discretion. Thus, Congress *mandated* that the Director "*shall* prescribe *regulations* … setting forth the standards for the showing of sufficient grounds *to institute* a review" and for "*establishing* and governing [a] review under this chapter and the relationship of such review to other proceedings under this title." 35 U.S.C. §§ 316(a) and 326(a) (emphasis added). This plain language provides that these mandated regulations must prescribe not only the standards that *petitioners* must meet for "showing of sufficient grounds," but also the standards to which the *Director* must adhere for "*establishing*" (initiating) the review proceedings.

27.     In this capacious grant of rulemaking authority, Congress also directed that in promulgating these *mandatory* regulations, "the Director *shall* consider the effect of *any such regulation* on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings." 35 U.S.C. §§ 316(b), 326(b) (emphasis added). The statutory term "shall" is an imperative here, denoting a definite

9

obligation.[3] Moreover, the term "*any*" coupled with the term "*such regulation"* in the *singular* form (as opposed to "the *regulations*" in plural as a whole), mandates *particularized* consideration on a *regulation-by-regulation basis,* of the "effect" on the four enumerated statutory factors, (hereinafter, the "Four Mandatory Statutory Factors"). And the term *prescribe regulations* is synonymous with notice-and-comment rulemaking.

28.    The D.C. Circuit explained that "[a] statutorily mandated factor, by definition, is an important aspect of any issue before an administrative agency, as it is for Congress in the first instance to define the appropriate scope of an agency's mission. When Congress says a factor is mandatory, that expresses its judgment that such a factor is important" and must be addressed during the regulatory process. *Pub. Citizen v. Fed. Motor Carrier Safety Admin*., 374 F.3d 1209, 1216 (D.C. Cir. 2004).[4]

29.    In sum, the AIA tasked the Director with the *nondiscretionary duty* to promulgate regulations that govern the exercise of the Director's discretion in deciding whether or not to

---

[3] *See SAS Inst., Inc. v. Iancu*, 138 S. Ct. 1348, 1354 (2018) (finding that the word "shall" means "must" because it "generally imposes a nondiscretionary duty"); *Kingdomware Techs., Inc. v. United States*, 136 S. Ct. 1969, 1977 (2016) ("Unlike the word 'may,' which implies discretion, the word 'shall' usually connotes a requirement."); *Farrel Corp. v. U.S. Int'l Trade Comm'n*, 949 F.2d 1147, 1153 (Fed. Cir. 1991) ("The use of 'shall' in a statute is 'the language of command'").

[4] *See also Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin*., 656 F.3d 580, 587 (7th Cir. 2011) ("When Congress requires an agency to address something before issuing a regulation, that factor is by definition an 'important aspect of the problem' under *State Farm*."); *United Mine Workers v. Dole,* 870 F.2d 662, 673 (D.C. Cir.1989) (agency defies a "statutory limitation on [its] authority" when it ignores mandatory factor); *Mozilla Corp. v. FCC*, 940 F.3d 1, 60 (D.C. Cir. 2019) (*"A rule is arbitrary and capricious if an agency fails to consider a factor the agency must consider under its organic statute."*) (cleaned up, quoting *Lindeen v. SEC*, 825 F.3d 646, 657 (D.C. Cir. 2016)); *Citizens Coal Council v. U.S. E.P.A.*, 385 F.3d 969, 977 (6th Cir. 2004), *on reh'g en banc,* 447 F.3d 879 (6th Cir. 2006) ("[A]n agency abuses its discretion when it fails to consider a factor the statute directs it to consider in promulgating regulations."); *Newspaper Ass'n of Am. v. Postal Regulatory Comm'n*, 734 F.3d 1208, 1210 (D.C. Cir. 2013) (In regulating rates "for market-dominant products, the Commission must consider the statutory factors set out in [the law].")

institute any particular AIA trial. The AIA required the Director to issue such regulations within one year of the AIA's enactment, AIA §§ 6(c)(1), 6(f)(1), after a notice and comment rulemaking process that considers the effect of *each* such individual regulation on the Four Mandatory Statutory Factors. Thus, the pertinent statutory framework specifies how the *implementing regulations* should take into account competing interests: the need to accommodate a stream of petitions to institute AIA trials, while judiciously denying institution in some cases to meet the statutory fairness and efficiency goals described above with due consideration of the Four Mandatory Statutory Factors.

### The USPTO fails to perform its nondiscretionary duty of issuing regulations governing the decisions on institution of AIA trials

30.     Following the enactment of the AIA, the USPTO promulgated in August 2012 regulations governing AIA trials.[5] However, conspicuously missing were regulations establishing any criterion, standard, or procedure for deciding on institution of AIA trials, except only for the following trivial provisions: (i) the Director delegated to the PTAB by regulation the decisions to institute AIA trials in 37 C.F.R. § 42.4(a); (ii) 37 C.F.R. §§ 42.108(c), 42.208(c) parroting the statute in 35 U.S.C. §§ 314(a), 324(a) on the likelihood of success thresholds for instituting IPRs and PGRs respectively; and (iii) 37 C.F.R. §§ 42.102(b), 42.202(b) similarly reciting portions of AIA §§ 6(c)(2), 6(f)(2) that authorize the Director to limit the number of instituted IPRs and PGRs respectively, during the first four years of operation. While

---

[5] *See Rules of Practice for Trials Before the Patent Trial and Appeal Board and Judicial Review of Patent Trial and Appeal Board Decisions*, 77 FR 48612 (Aug. 14, 2012); *Changes to Implement Inter Partes Review Proceedings, Post-Grant Review Proceedings, and Transitional Program for Covered Business Method Patents*, 77 FR 48680 (Aug. 14, 2012); and *Transitional Program for Covered Business Method Patents—Definitions of Covered Business Method Patent and Technological Invention*, 77 FR 48734 (Aug. 14, 2012).

promulgating many regulations governing the proceedings post-institution, the USPTO deliberately chose to ignore specific statutory mandates for regulating institution decisions.

31.     Nevertheless, in discussing limits on the number of instituted AIA trials in the first four years pursuant to AIA §§ 6(c)(2), 6(f)(2), the USPTO stated in the preamble to the final rule that "the Office *does not plan* to limit the number of petitions at this time." 77 FR 48612, 48696 (Aug. 14, 2012) (Emphasis added). This is a remarkable declaration, revealing that without any experience of the impending demand for the new proceedings, the USPTO instead "planned" to *avoid* denying institution of AIA trials regardless of the workload burden on the PTAB. This is consistent with the PTO's defiance of the express statutory directives to promulgate regulations that would prescribe criteria, standards, and procedures for *denying* institution of AIA trials pursuant to 35 U.S.C. §§ 315(d), 316(a), 316(a)(6), 316(a)(11), 325(d), 326(a), 326(a)(6), and 326(a)(11) as described above. Under such regulations, had they been adopted, the USPTO would have been bound to deny instituting numerous AIA trials—a scenario it apparently sought to avoid. Indeed, evidence provided in Exhibit D shows that the USPTO was making every effort to institute as many AIA trials as possible, making APJs work overtime at the PTAB and to exceed by more than a factor of two the limit Congress allowed the USPTO to set for avoiding overloading the PTAB.

**The PTAB end-runs around the APA by regulating through adjudications,
a practice the Federal Circuit condemned**

32.     The USPTO published a Patent Trial Practice Guide to advise the public on actions to be taken in each of the new proceedings, which for some circumstances substituted for the regulations that the Office failed to promulgate. *See Patent Office Trial Practice Guide*, 77 Fed. Reg. 48756 (Aug. 14, 2012). Upon commencement of its operation on AIA trials, the PTAB began issuing decisions, including some decisions made "on the fly" with no underlying

regulatory support. In this way, the PTAB arrived at, and designated some decisions as "precedential," posting them on the PTAB website.[6] The Office has designated more than 40 PTAB decisions in such proceedings as precedential or informative, and it has issued several updates to the Trial Practice Guide to include such "precedents" in guides that were subsequently consolidated.[7]

33.     By designating PTAB decisions as "Precedential Opinions" ("POs"), the USPTO intended those to be binding, effectively regulating through adjudications. However, the USPTO does not publish these POs in the *Federal Register,* nor can the public provide public comments on the POs' content or whether they should be so designated. The USPTO nevertheless contended that such PTAB decisions are entitled to deference and have the effect of law, a proposition challenged on appeal at the Federal Circuit. That court in 2017 held that the PTAB decisions cannot substitute for the notice and comment rulemaking process and thus cannot enjoy any deference. "The Patent Office cannot effect an end-run around [the APA] by conducting rulemaking through adjudication ...." *Aqua Products, Inc. v. Matal*, 872 F.3d 1290, 1339 (Fed. Cir. 2017) (Reyna, CJ); *see also id.*, 872 F.3d at 1331 (Moore, CJ., concurring) ("It is not for courts to second guess Congress' decision that the Director must effect such rulemaking through regulation.")

34.     The legal implications of the Federal Circuit's condemnation was apparently ignored by the USPTO, as it doubled-down on its extra-regulatory practice by creating in 2018 the Precedential Opinion Panel ("POP") to streamline the "end-run around the APA." The POP,

---

[6] See *Precedential and informative decisions* at www.uspto.gov/patents/ptab/precedential-informative-decisions, and expand the tab: "Issues specific to AIA trial proceedings."
[7] *See Patent Trial and Appeal Board Consolidated Trial Practice Guide* (Nov. 2019), available at www.uspto.gov/TrialPracticeGuideConsolidated.

typically comprising the Director, the Commissioner for Patents, and the Chief Judge of the PTAB,[8] may be convened to rehear matters in pending trials on issues of "exceptional importance;" and may assist the Director in determining whether a decision previously issued by the PTAB should be designated as precedential or informative. SOP-2 at 3-4.

35.    In a grab of executive power that appears to defy *Aqua Products* and the statutory mandate to promulgate regulations, the USPTO declared that "[t]he [POP] generally will be used to establish *binding* agency authority concerning *major policy* or procedural issues, or other issues of *exceptional importance* in the limited situations where *it is appropriate to create such binding agency authority through adjudication before the Board*." SOP-2 at 2 (emphasis added). Without citing any authority for this proposition, the USPTO explained the meaning of "binding" by stating: "[a] precedential decision is binding Board authority in subsequent matters involving similar facts or issues," SOP-2 at 11, confirming that the Office intended POs to substitute for notice and comment rulemaking that have the effect of law. This POP procedure, however, does not allow for public notice of or public comment on the POP's decision to designate a PTAB decision as precedential. SOP-2 at 8–11. Establishing the POP, the USPTO hoped, "will result in more decisions being designated as precedential,"[9] to substitute PTAB adjudications for notice and comment rulemaking.

36.    In March 2020, the Federal Circuit, cognizant of SOP-2's provisions, again condemned the USPTO's practice of regulation by adjudication. *Facebook, Inc. v. Windy City Innovations, LLC*, 953 F.3d 1313, 1343 (Fed. Cir. 2020) ("Issuing an order that a POP panel has

---

[8] PTAB, *Standard Operating Procedure* 2 (SOP 2, Rev. 10), at 3-4 (Sept. 20, 2018), at www.uspto.gov/sites/default/files/documents/SOP2%20R10%20FINAL.pdf. (Hereinafter "SOP-2").

[9] *See* "*PTAB issues revised Standard Operating Procedures*," (Sep. 20, 2018) at www.uspto.gov/subscription-center/2018/ptab-issues-revised-standard-operating-procedures.

been convened in a particular case and soliciting amicus briefs is not equivalent in form or

substance to traditional notice-and-comment rulemaking."). The court reminded the agency that

only the Director is delegated with rulemaking authority to create rules having the effect of

law—not APJs on the PTAB, upon whom Congress conferred only adjudicative authority,

35 U.S.C. § 6(b)(4). *See Facebook, Inc.,* 953 F.3d at 1342 ("[I]n agencies where Congress has

not expressly delegated both rulemaking and adjudicative authority to a single delegee, as in the

PTO, adjudication may not operate as an appropriate mechanism for the exercise of

rulemaking.") (Citing *Martin v. Occupational Safety and Health Rev. Comm'n*, 499 U.S. 144,

154-55 (1991)).

### The USPTO accepts the Federal Circuit's rulings and finally proceeds with rulemaking governing denials of institution, but is blocked by a chorus of large powerful tech companies.

37.     After the second rebuke by the Federal Circuit, the USPTO finally appeared ready

to change its practice of regulating by adjudication in favor of proper regulation under the APA's

notice and comment procedure. The Office focused on certain provisions for discretionary

denials of institution to replace POs specifically dealing with such issues. By Spring of 2020, the

PTAB has set forth in numerous POs, various criteria and factors used in discretionary denials of

instituting AIA trials.[10] It has also ordered several discretionary denials that it designated

---

[10] *See, e.g., General Plastic Co., Ltd.* v. *Canon Kabushiki Kaisha,* IPR2016–01357, 2017 WL
3917706, at *7 (PTAB Sept. 6, 2017) (providing a nonexclusive list of factors that the Board
considers when evaluating discretionary denial of follow-on petitions, also known as ''serial''
petitions, under 35 U.S.C. § 314(a)); *Valve Corp.* v. *Elec. Scripting Prods., Inc.,* IPR2019–
00062, –00063, –00084, 2019 WL 1490575 (PTAB Apr. 2, 2019) (*Valve I*) (explaining that the
Board considers any relationship between petitioners when weighing the *General Plastic*
factors); *Valve Corp.* v. *Elec. Scripting Prods., Inc.,* IPR2019–00064, –00065, –00085, 2019 WL
1965688 (PTAB May 1, 2019) (*Valve II*) (applying the first *General Plastic* factor to a petitioner
that joined a previously instituted IPR proceeding and, therefore, is considered to have
previously filed a petition directed to the same claims of the same patent); *Advanced Bionics,*

"informative."[11] Under Director Andrei Iancu's leadership, the USPTO included planned regulations based on those POs in its Spring 2020 Regulatory Agenda.[12] The Regulatory Unified Agenda is generally published twice a year as a government-wide publication of rulemaking actions that agencies expect to take in the coming 12 months. On July 22, 2020 the USPTO submitted this planned regulation package to the Office of Information and regulatory Affairs ("OIRA") for regulatory review under Executive Order 12,866,[13] a step agencies must take prior to publishing proposed rulemaking.

38.    In August and September 2020, the OIRA received a barrage of requests for meetings from companies and industry groups, who have subsequently met with OIRA, with USPTO's attendance, to discuss the planned PTAB regulatory package. An industry press account reported that the requests for the meetings were "by large tech companies, including Apple, Cisco and Intel … and other stakeholders [who] fear that the USPTO plans to undermine

---

*LLC v. MED-EL Elektromedizinische Geräte GmbH*, IPR2019–01469, 2020 WL 740292 (Feb. 13, 2020) (Identifies considerations for denying institution under § 325(d) based on arguments or prior art that had previously been presented to the Patent Office); *Apple Inc.* v. *Fintiv, Inc.,* IPR2020– 00019, 2020 WL 2126495 (PTAB Mar. 20, 2020) (summarizing the factors the Office has considered when a patent owner argues for discretionary denial under *NHK Spring Co., Ltd.* v. *Intri-Plex Techs., Inc.,* IPR2018–00752, 2018 WL 4373643 (PTAB Sept. 12, 2018) due to an earlier trial date).

[11] *See, e.g., Adaptics Ltd.* v. *Perfect Co.,* IPR2018– 01596, 2019 WL 1084284 (PTAB Mar. 6, 2019) (applying discretion to deny a petition where the petition lacks particularity in identifying the asserted challenges that resulted in voluminous and excessive grounds); *Deeper, UAB* v. *Vexilar, Inc.,* IPR2018– 01310, 2019 WL 328753 (PTAB Jan. 24, 2019) (applying discretion to deny a petition where the petitioner demonstrates a reasonable likelihood of prevailing only as to 2 claims out of 23 claims challenged and only as to 1 of 4 asserted grounds of unpatentability); *Chevron Oronite Co.* v. *Infineum USA L.P.,* IPR2018–00923, 2018 WL 5862245 (PTAB Nov. 7, 2018) (applying discretion to deny a petition where the petitioner demonstrates a reasonable likelihood of prevailing only as to 2 claims out of 20 claims challenged).

[12] *See* RIN: 0651-AD47, *Amendments to the Rules of Practice for Trials Before the* [*PTAB*] at www.reginfo.gov/public/do/eAgendaViewRule?pubId=202004&RIN=0651-AD47.

[13]    *EO 12866 Regulatory Review*, RIN 0651-AD47, Received Date: 07/22/2020 at www.reginfo.gov/public/do/eoDetails?rrid=130908.

the effectiveness of the [PTAB] in a new rules package that would be difficult to challenge." *See* Exhibit E. That press account cited a tech industry source who was concerned that the PTAB rules package "will go further than codification and introduce a new standing requirement, among other new changes that would make it more difficult to seek post grant reviews, including [IPRs], at the PTAB." *Id*. Those companies also sued the USPTO on August 31, 2021, seeking judicial declaration that one patentee-favorable POP discretionary denial rule ("*Fintiv*") was void under the APA.

39.     On October 19, 2020, OIRA formally concluded its EO 12866 as the AD47 rulemaking package was "withdrawn" by the USPTO.[14] The "large tech companies" succeeded and the USPTO derailed the rulemaking process never to renew it.

**Plaintiffs' Petition for Rulemaking is expressly provided for by the APA**

40.     The APA provides that each agency "shall give an interested person the right to petition for the issuance, amendment, or repeal of a rule." 5 U.S.C. § 553(e). The APA further provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it." 5 U.S.C. § 555(b).

41.     In denying the Petition, the USPTO stated it will consider proposals in the Petition in "future rulemaking on AIA trials," thereby committing to a discrete agency action that it is required to take, but never did.

**ALLEGATIONS SUPPORTING DECLARATORY RELIEF**

42.     Plaintiffs repeat and re-allege the averments of paragraphs 1-41 as if fully set forth herein.

---

[14] See "*OIRA Conclusion of EO 12866 Regulatory Review*," RIN 0651-AD47 (October 19, 2020) at www.reginfo.gov/public/do/eoDetails?rrid=130908.

43.     Actual and substantial controversies exist between Plaintiffs and Defendants regarding the Defendants' denial of the Petition.

44.     Declaratory relief will clarify the rights and obligations of the parties and is, therefore, appropriate to resolve these controversies.

45.     Numerous members of US Inventor and NSBU have been directly harmed and continue to be harmed by Denial of the Petition. (E.g., Exhibits F-G). US Inventor and NSBU have been harmed by such Denial as organizations. (Ex. F). Both US Inventor and its membership have experienced concrete harm from Denial of the Petition fairly traceable to actions and inactions of Defendants. Such harm is capable of repetition, yet evading review, on account of the six-month deadline for any particular member filing its preliminary response to a newly-filed petition.

<u>**COUNT I**</u>
**VIOLATION OF THE APA, 5 U.S.C. §§ 553, 555, 706**

46.     Plaintiffs repeat and re-allege the averments of paragraphs 1-45 as if fully set forth herein.

47.     The APA requires this Court to "compel agency action unlawfully withheld or unreasonably delayed." 5 U.S.C. § 706(1).

48.     The APA requires this Court to hold unlawful and set aside any agency action that is "(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; . . . (C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; [or] (D) without observance of procedure required by law." 5 U.S.C. § 706(2).

49.     35 U.S.C. § 2(b)(2) provides that "regulations . . . govern[ing] the conduct of proceedings in the [PTO] . . . shall be made in accordance with section 553 of title 5."

50.     5 U.S.C § 553 requires that an agency engage in notice-and-comment rulemaking.

51.     35 U.S.C. §§ 316(a) and 326(a) require that the Director promulgate regulations regarding "sufficient grounds to institute" AIA trial proceedings under 35 U.S.C. §§ 314(a) and 324(a).

52.     5 U.S.C § 555(b) provides that "within a reasonable time, each agency shall proceed to conclude a matter presented to it."

53.     5 U.S.C § 555(e) requires the USPTO to provide notice "of the denial in whole or in part of a written … petition," and the notice "shall be accompanied by a brief statement of the grounds for denial."

54.     Factors governing denial of AIA trial petitions meet the definition of the type of regulations Congress required the Director to promulgate under 35 U.S.C. §§ 316(a) and 326(a) for "sufficient grounds *to institute* a review" and for "*establishing* … review under this chapter and the relationship of such review to other proceedings."

55.     The Director has not yet promulgated regulations to address the factors governing denial of AIA trial petitions, discretionary or otherwise, including institution denials prescribed in 35 U.S.C. §§ 315(d), 316(a), 316(a)(6), 316(a)(11), 325(d), 326(a), and 326(a)(6). Instead, the Director has used the Trial Practice Guide and precedential designation of ad hoc adjudicatory decisions as substitutes for regulations promulgated by notice-and-comment rulemaking.

56.     A grant of the Petition would have satisfied the Director's obligation to initiate public notice and comment rulemaking to promulgate regulations to address the factors governing denial of AIA trial petitions.

57.     A grant of the Petition would not have predetermined the content of final rules, since the content of final rules would have been determined through the APA process of

receiving comments, to which the agency could then have responded with textual adjustments in a final rule or rules.

58.     Congress set forth the factors to guide the necessary rulemaking by the Director in 35 U.S.C. §§ 316(b) and 326(b), including that "the Director shall consider the effect of any such regulation on the economy, the integrity of the patent system, the efficient administration of the Office, and the ability of the Office to timely complete proceedings instituted under this chapter." The alternatives to rulemaking used by Defendants (Trial Practice Guide statements and "precedential" designation of ad hoc adjudication decisions) do not take into account the Congressionally-mandated factors, nor do they follow the USPTO's notice and comment obligations under the APA.

59.     In view of the statutory framework requiring rulemaking for AIA trial institution factors, and the USPTO's obligation to properly address the Petition, the Denial was contrary to law.

60.     The reasons given for the Denial were also arbitrary and capricious and an abuse of discretion.

61.     It was arbitrary and capricious to deny a petition seeking to regulate the factors governing denial of institution by using a non-sequitur as the reason: the "Office denies the Petition [for a rulemaking presently because it] will be considered as part of [an unspecified] future rulemaking on AIA trials." The USPTO's reasoning that it will not presently commence with rulemaking because it may commence with rulemaking later is *not* a "statement of the grounds for denial" required under the APA. 5 U.S.C § 555(e). "A 'fundamental' requirement of administrative law is that an agency 'set forth its reasons' for decision; an agency's failure to do so constitutes arbitrary and capricious agency action." *Tourus Records v. DEA*, 259 F.3d 731,

737 (D.C. Cir. 2001) (Garland, J., citing *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983)).

62.    Moreover, the USPTO's statement that the Petition is denied because it included rulemaking suggestions that would be considered only in unspecified "future rulemaking on AIA trials," is an admission that the USPTO failed to and does not intend to "conclude a matter presented to it," 5 U.S.C § 555(b), in violation of the APA. *See also* 5 U.S.C. § 706(1) (providing that courts shall "compel agency action unlawfully withheld or unreasonably delayed.")

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs US Inventor and NSBU respectfully request that this Court enter judgment providing the following relief:

(A) A declaration that the USPTO and the "performing the functions and duties" Director Commissioner Hirshfeld, unlawfully denied the Petition because the absence of regulations governing AIA trial institution factors is contrary to 35 U.S.C. §§ 316(a) and 326(a);

(B) A declaration that the USPTO and the "performing the functions and duties" Director, Commissioner Hirshfeld's, denial of the Petition was an action unlawfully withheld, was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law, because it violated the APA;

(C) Vacatur of the USPTO's decision to deny the Petition and an order that the USPTO promptly act to conclude the matter presented to it the Petition in compliance with law.

(D) An award of costs and reasonable fees and expenses of attorneys under the Equal Access To Justice Act, 28 U.S.C. § 2412; and

(E)  All other relief to which the Plaintiffs may show themselves to be entitled.

Dated:  July 27, 2022                    Respectfully submitted,

                                         */s/ Brian Medich*
                                         Brian Medich (D.C. Bar No. 1671486)
                                         DUNLAP BENNETT & LUDWIG PLLC
                                         1200 G Street NW, Suite 800
                                         Washington, DC 20005
                                         Telephone: (571) 919-6734
                                         Facsimile: (703) 777-3656
                                         *bmedich@dbllawyers.com*

                                         Robert Greenspoon (*pro hac vice* forthcoming)
                                         DUNLAP BENNETT & LUDWIG PLLC
                                         333 N. Michigan Ave #2700
                                         Chicago, Illinois 60601
                                         Telephone: (312) 551-9500
                                         Facsimile: (703) 777-3656
                                         *rgreenspoon@dbllawyers.com*

                                         *Counsel for Plaintiffs*